## MOORES *v.* CITIZENS' NATIONAL BANK OF PIQUA, OHIO.*

(*Circuit Court, S. D. Ohio, W. D.* February 8, 1883.)

1. **AGENT ACTING FOR HIS PRINCIPAL AND FOR HIMSELF—NOTICE.**

   An agent cannot lawfully act for his principal and for himself, in matters in which they have adverse interests, and every person dealing with an agent who is acting for himself as well as for his principal, in such matters, is put upon inquiry as to the authority and good faith of the agent.

2. **SAME—CASE STATED.**

   The plaintiff contracted to loan money to M., cashier of the defendant bank, for his individual uses, on his representations that he held a number of shares of stock of said bank, and his agreement to transfer a certain number thereof to the plaintiff as security for the loan. In pursuance of said agreement, M. afterwards produced a certificate of stock bearing the genuine signatures of the president, and of himself as cashier, on the faith of which plaintiff loaned him the money. In fact, M. had previously hypothecated and transferred to others all the stock of said bank which he had held, and the certificate was fraudulently issued, without any transfer of stock, and without any knowledge of any of the officers of the bank except himself, he having used for that purpose a certificate left with him for use as occasion might require, signed by the president in blank. The plaintiff had no knowledge of the fraud, and believed that the certificate had been issued in good faith and by competent authority, but knew that the transaction was for the benefit of M. *Held*, that the knowledge that M. was acting for himself as well as for the bank in issuing the certificate, put the plaintiff upon inquiry as to the authority and good faith of M., and having failed to make it, the bank is not liable on the certificate.

*Paxton & Warrington* and *Stallo, Kittredge & Shoemaker*, for plaintiff.

*Ramsey & Matthews* and *Hoadly, Johnson & Colston*, for defendant.

(1) Certificates of stock are non-negotiable instruments. *Lanier* v. *Bank*, 11 Wall. 369; *Mechanics' Bank* v. *Railroad*, 13 N. Y. 599; *Schuyler* v. *Railroad*, 34 N. Y. 30.

(2) The assignee of a non-negotiable instrument takes no better title than his assignor. Where a party *intentionally* issues such a paper, he will be held liable to innocent holders on the ground of estoppel *in*

*Reported by J. C. Harper, Esq. of the Cincinnati bar.

*pais.* But mere negligence will not create such estoppel. *Mechanics' Bank Case,* and other cases above cited; *Swan* v. *Australasian Co.* 2 Hurl. & C. 175; *Queen* v. *Shropshire Co.* L. R. 7 Eng. & Ir. Ap. 496; *Pollard* v. *Vinton,* 105 U. S. 7; *Walbridge* v. *Bank,* 19 Ohio St. 419.

(3) The act of the cashier in the present case was done upon his own behalf. He was not dealing upon behalf of the bank, and the plaintiff knew that he was acting in his own business. The act, therefore, was not within the scope of his agency, real or apparent. The act of the president in signing in blank was done upon behalf of the bank, but it was, at most, an act of ordinary negligence, and can create no liability, not being the *proximate cause of the injury. The bank did not issue the certificate. Dickson* v. *Reuter,* L. R. 3 C. P. 1; *Lowry* v. *Telegraph Co.* 60 N. Y. 198; *Bank* v. *Telegraph Co.* 30 Ohio St. 554; *Bank* v. *Bank of Columbia,* 5 Wheat. 336; *Bank* v. *Dunn,* 6 Pet. 51; *Bank* v. *City Bank,* 21 How. 356; *Claflin* v. *Bank,* 22 N. Y. 293; *Foster* v. *Essery Bank,* 17 Mass. 478.

BAXTER, J., (*charging the jury.*) This controversy is one in which a loss occasioned by the wrongful act of a third party must be borne either by the plaintiff or defendant to this action. There is no substantial disagreement between opposing counsel as to the facts. Robert B. Moores, at the time the defendant's cashier, desired to borrow money from the plaintiff. She was willing to make a loan upon satisfactory security. Moores represented he owned a considerable amount of the defendant's capital stock, and promised to transfer 91 shares, of $100 each, on the books of the bank to the plaintiff, and issue a certificate to her therefor. He thereupon made out a certificate in the usual form, in which it was certified that the plaintiff was entitled to 91 shares, of $100 each, of the capital stock of said bank, transferable on the books of the bank by the plaintiff in person, or by her attorney, on the surrender of said certificate; and upon the faith of this certificate, which the plaintiff then believed to be a valid evidence of the ownership of the stock called for therein, supplemented by the contract of the fifteenth of July, 1867, which has been read in evidence, the plaintiff loaned or advanced Moores $9,100. It is conceded that this money so advanced belonged to her, and that she did not then possess any personal knowledge of the fraudulent character of said certificate.

But it is now admitted that although the books of the defendant showed Moores was the owner of 275 shares of the capital stock of the defendant at that time, the same had been transferred and hy-

pothecated by him to others, and that in point of fact he did not own any stock. But, in order to supply the security for the loan according to his promise and agreement, he, without authority and without any consideration to the bank, and without any knowledge on the part of any officer or directors thereof, fraudulently made and issued the certificate to the plaintiff, offered in evidence herein, and delivered the same to her; and at the same time, and as a part of the same contract, the parties entered into the aforesaid agreement of the fifteenth of July, 1867, in which it is stipulated that the plaintiff should, upon demand of Robert B. Moores or his assigns, reassign the same to him. And further, if the plaintiff should require it, said Moores agreed to repurchase said stock at its par value, and in the mean time to guaranty an annual dividend thereon of not less than 10 per cent. This certificate is verified by the genuine signatures of the defendant's then president and cashier. It is furthermore conceded that the defendant and all of its officers, except Moores, who withdrew therefrom in July, 1869, were ignorant of the existence of plaintiff's said certificate until June, 1872. When a knowledge thereof was communicated to the defendant's officers, they insisted that it was fraudulent and spurious, and not obligatory upon the bank, and the defendant has hitherto declined to recognize plaintiff as a stockholder, denied to her all the rights pertaining to that relation, and refused to account with or pay her anything therefor. It further appears that no part of the money loaned or advanced by the plaintiff as aforesaid for said certificate has been repaid her. Moores, who perpetrated the wrong, is, it is said, insolvent, and per consequence the loss, as we have already said, must be sustained by either the plaintiff or defendant. It must fall wherever the law upon the foregoing statement of the facts requires it to be placed.

Now, if we accept the plaintiff's theory of the law, to-wit, that a party purchasing or loaning money in good faith upon a certificate of stock, bearing the genuine signatures of the corporate officers authorized and charged with the duty of transferring stock on the books of the company, and issuing certificates of ownership therefor, in the usual form, and regular in all respects upon its face, without any knowledge of its fraudulent or spurious character, is entitled to recover from the corporation the damages sustained by reason of the spurious, fraudulent, and invalid character of such certificate, this court, as at present advised, entertains the opinion, and so instructs you, that no such recovery can be had upon the facts proven in this

case.  If a recovery could be had in any case, it could only be had by an innocent holder for value.    The plaintiff is, in the ordinary sense, an innocent holder,—that is, she relied on Moores' representations; believed he owned stock in the defendant's corporation; relied, no doubt, in good faith, upon his promise to have 91 shares thereof transferred to her; and accepted the same in the belief that the certificate was issued by authority, in the due course of business, in lieu of stock belonging to him, and which he had surrendered and caused to be canceled.

But it must be borne in mind that Moores, in his efforts and negotiations to borrow, was acting for himself and not as cashier of the bank.    His representations that he was the owner of a large amount of defendant's capital stock were not official representations, and cannot, upon any principle of law known to this court, bind the bank. They were but the representations of an individual, contending with pecuniary embarrassments, and if believed to be true and acted upon by the plaintiff, and loss resulted therefrom, the bank is in no way responsible for the same.    As cashier, he was but the agent of the defendant, and could only bind it within the scope of his authority, and in the regular course of business.    But Moores, when assuming to borrow money, either for himself or his friends, was acting for himself, in a matter in which the bank had no interest, and it therefore cannot be affected by anything that he may have promised or said, as an inducement to make the loan.

If plaintiff relied on such representations, as she evidently did, and the same turned out to be false, the defendant is under no legal obligation to make good the loss.    This much will not be seriously questioned by the plaintiff's counsel.    But they say that, as cashier, he was intrusted with the custody of the defendant's certificate-book, containing blank certificates signed by the president, and that he was, as cashier, authorized to accept and cancel surrendered certificates, transfer the same, and issue new certificates to transferees, and that such service came within the scope of his agency; that the issuance by him of the certificate held by the plaintiff, and constituting the foundation of this action, was an official act within the scope of his special duties; and that he, having afterwards obtained a loan or advance of money from the plaintiff upon the faith of its regularity and genuineness, and in ignorance of its spurious and fraudulent character, perpetrated a wrong for which the defendant, the bank, who clothed him with the power to inflict the injury, is justly and legally amenable.

It may, as we have already said for the sake of the argument, be conceded that money loaned or advanced by an innocent party, upon the faith of such a certificate, could be recovered from the corporation. But is the plaintiff, in the eye of the law, such an innocent person? These terms have in law a technical meaning. Ignorance of facts, which the law under the circumstances of the particular case requires a party to know, does not excuse the want of diligence or throw around the party the immunity which attaches to persons exempt from all laches or blame. In other words, if there is any fact which, in contemplation of law, puts a party on inquiry, and he fails to make the investigation which, if made, would develop the fraud, he is to be treated in all respects as if he had actual knowledge of the facts. There is another principle of law applicable to this case. An agent cannot lawfully act in the same matter for his principal and for himself, in cases wherein their interests are adverse to each other. To illustrate: If a cashier were to draw a check *in his own favor*, and then, as cashier, certify for the bank that the check was good, and he had funds in the bank to meet it, the bank would be bound to pay it upon proper indorsement and presentation. But if, in point of fact, he had no funds in the bank to check upon, the bank could not be held liable upon his certificate, although made in his capacity of cashier of the bank, notwithstanding the party suing the bank may have, in good faith, bought the check in the belief, predicted on the cashier's certificate, that the check was drawn against a fund in the hands of the bank, and that it was good, and would be paid on proper presentation. Yet, if such check was drawn in favor of a stranger, and certified by the cashier to be good, his bank would be legally bound and liable thereon. The reason why the bank is not liable for a check drawn by a cashier in his own favor and certified to be good, even in the hands of one buying it in good faith and in ignorance of any fraud, has been stated. An agent cannot act for his principal and himself in matters in which they have adverse interests, and every one purchasing such a check is, upon its face, admonished by the law of the necessity of making inquiry into the fairness and good faith of the transaction, and if he does not do this, however honestly he may rely on the integrity of the agent, the loss must be sustained by him.

Now, is this principle applicable to the facts of this case? Keep in mind that the plaintiff was dealing with Moores, the cashier, in his individual capacity. She agreed to loan her money to him on

condition that he would have a certificate issued to her for 91 shares of the defendant's capital stock. He undertook to do this. The undertaking was for his own benefit, in order to enable him to consummate the loan. He had possession of the bank's book of certificates. One of the certificates contained therein was signed by the president in blank, and left with him for use when occasion required it. He took this, and without authority, without consideration, and without the knowledge of any other officer of the bank, filled it up in the plaintiff's name and delivered it to her, with the contract of the fifteenth of July, 1867, as a security for the repayment of the money loaned. This certificate, made by Moores for his own benefit, is filled up in his handwriting and signed by him as cashier. Now, while the plaintiff relied upon his honesty, and believed that the certificate had been issued in good faith and by competent authority, she knew that in issuing it Moores was acting for himself; that the certificate was issued by him for his own benefit, to be used for the purpose and in the manner stated. This knowledge, we think, was enough to put her on inquiry. If she had made the inquiry, which the law as well as prudential reasons required, under the circumstances of this case, Moores' fraudulent action would have been developed, and the loss resulting therefrom avoided.

Agents intrusted with important interests and invested with large powers have many opportunities for an abuse of their trusts. Nevertheless, if their fraudulent acts are within the scope of their agencies, and a loss must result either to their principals or to an innocent person, who relied upon their action in the belief that the same was valid, the law would cast the loss upon the principal who selected and placed the agent in the position to do the wrong, and not on the innocent party. But if the complaining party knows, when accepting a check, certificate of stock, receipt, or other acquittance or obligation, issued or executed by the agent in the name of the principal, that he was acting in regard thereto for himself and in his own interest, such knowledge would put such party on inquiry, and divest him or her of the legal rights and incidents pertaining to that class of persons.

The plaintiff having had knowledge of the fact that Moores, upon whom she relied to have the stock transferred to her, was acting for himself as well as in his capacity of cashier,—that is, acting for the bank upon one side and for himself on the other, in reference to the matter of issuing this certificate,—she is not, in the judgment of this

court, an innocent holder of the stock; and as the certificate was issued without authority and in fraud of the rights of the bank, the court instructs you that the plaintiff is not entitled to recover in this action. Your verdict will therefore be for the defendant.